IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **QWEST COMMUNICATIONS CORPORATION,** | ) ) ) | CASE NO. 8:05CV182 |
| **Plaintiff,** | ) ) ) | |
| v. | ) ) ) | |
| **NEBRASKA PUBLIC SERVICE COMMISSION, and GERALD L. VAP, ANNE C. BOYLE, LOWELL C. JOHNSON, ROD JOHNSON, and FRANK E. LANDIS JR., in their official capacities as the Commissioners of the Nebraska Public Service Commission,** | ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER |
| **Defendants.** | ) | |

This matter is before the Court on a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim, or in the alternative, on a Motion to Stay the Action filed by Defendants, the Nebraska Public Service Commission ("NPSC") and its Commissioners, Gerald L. Vap, Anne C. Boyle, Lowell C. Johnson, Rod Johnson, and Frank E. Landis, Jr. (collectively "Commissioners"). (Filing No. 25). In the event the Court does not dismiss or stay the action, the Defendants also ask that the trial be held in Lincoln, Nebraska. (*Id.*). The matter has been fully briefed, and the Court has considered the evidence submitted.

Plaintiff Qwest Communications Corporation ("Qwest") seeks declaratory and injunctive relief from NPSC's allegedly unlawful attempt to impose state regulation on Qwest's interstate Internet protocol ("IP")-enabled service. (Filing No. 1, hereafter, "Complaint" ¶ 1,2). The Complaint alleges the state regulation violates: the Supremacy Clause; the Equal Protection Clause; the Commerce Clause; Due Process; and various

Nebraska state laws and regulations. (Complaint ¶¶ 51-73).

## *Standard*

**Fed. R. Civ. Pro. 12(b)(1) (subject matter jurisdiction)**

The matter is before the Court pursuant to 28 U.S.C. § 1331, which grants district courts original jurisdiction of civil actions arising under the Constitution, laws, or treaties of the United States. In *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n.14 (1983), the United States Supreme Court stated, "a plaintiff who seeks *injunctive* relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."

**Fed. R. Civ. Pro. 12(b)(6) (failure to state a claim)**

In considering a motion to dismiss a complaint under Rule 12(b)(6), the court must assume all the facts alleged in the complaint are true; and must liberally construe the complaint in the light most favorable to the plaintiff. *Young v. City of St.* Charles, 244 F.3d 623, 627 (8th Cir. 2001); *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999). A Rule 12(b)(6) motion to dismiss a complaint should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Young,* 244 F.3d at 627. Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. *Schmedding*, 187 F.3d at 864.

## *Background*

Plaintiff Qwest Communications Corporation ("Qwest") is a corporation organized under the laws of Delaware with its principal place of business in Denver, Colorado. (Complaint ¶ 2). Qwest provides local and long distance telecommunications services and IP-enabled services, including voice applications. (*Id.*). Defendant Nebraska Public Service Commission ("NPSC") is a Nebraska agency. (*Id.* ¶ 3). Gerald L. Vap is the Chairman of NPSC, and Anne C. Boyle, Lowell C. Johnson, Rod Johnson, and Frank E. Landis, Jr., are members of NPSC. (*Id.* ¶¶ 4,5). Qwest seeks declaratory and injunctive relief, alleging that NPSC violated the Supremacy Clause, the Equal Protection Clause, the Commerce Clause, Due Process, and various state laws and regulations when NPSC imposed state regulation on Qwest's interstate IP-enabled service. (Complaint ¶¶ 1, 51-73).

"IP-enabled services" are services and applications relying on the Internet Protocol family. Notice of Proposed Rulemaking, *IP-Enabled Services,* WC Docket No. 04-36, FCC 04-28, (rel. March 10, 2004) at ¶ 1 n.1. A "protocol" is a "set of rules governing the format of messages that are exchanged between computers and people." H. Newton, *Newton's Telecom Dictionary*, Telecom Books 680 (2000). The term "Internet Protocol" or "IP" refers to "[p]art of the TCP/IP family of protocols describing software that tracks the Internet address of nodes, routes outgoing messages, and recognizes incoming messages." *Id.* at 447.

Voice over Internet Protocol ("VoIP") allows users to place and receive voice transmissions over the Internet from anywhere that a broadband IP connection is available. (Complaint ¶ 12). VoIP applications are not tied to a particular geographic location and the

3

telephone number assigned to VoIP subscribers bears no relationship to the location of the subscriber. (*Id.* ¶ 17). Unlike traditional telephone services which employ a public circuit-switched telephone network, VoIP permits real-time, two-way voice communications by transmitting packets of data over a series of physical networks. (*Id.* ¶ 14). Each packet of data is individually addressed, and routers determine which route to use for each individual packet. (*Id.* ¶ 14). Different packets from a single communication can take different physical paths to the same end location. (*Id.*). Several companies offer VoIP and other IP-enabled services, including Qwest and Vonage. (*Id.* ¶ 18).

**Telecommunications Act of 1996**

In 1996, Congress passed the Telecommunications Act of 1996 (the "Act"), Pub. L. No. 104-104, 110 Stat. 56, codified throughout Title 47 of the United States Code. Section 230(b)(2) of the Act announces Congress's intent "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal and State regulation." 47 U.S.C. § 230(b)(2). Under the Act, telecommunications carriers are required to contribute to the advancement of universal service. 47 U.S.C. § 254(d). "Universal service" is a concept that promotes several principles, including quality service, reasonable rates, and widespread access to the Internet. 47 U.S.C. § 254(b). The Federal Communications Commission ("FCC") is authorized to administer and enforce the provisions of the Act. *See* 47 U.S.C. § 201(b); *see also AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 378 (1999).

**Nebraska Telecommunications Universal Service Fund Act**

Section 254(f) of the Act allows states to "adopt regulations not inconsistent with the

[FCC's] rules to preserve and advance universal service."  47 U.S.C. § 254(f).  Section 254(f) provides that states may require "intrastate telecommunications services" to contribute "on an equitable and nondiscriminatory basis."  *Id.*

In 1997, Nebraska created the Nebraska Telecommunications Universal Service Fund Act ("NUSF").  Neb. Rev. Stat. §§ 86-316 - 86-329 (Reissue 2004).  The NUSF authorizes NPSC to implement a funding mechanism to supplement federal contributions to universal service.  Neb. Rev. Stat. §§ 86-317, 86-325.  NPSC's rules state that "[t]he NUSF surcharge shall be assessed on all end-user telecommunications services provided in Nebraska intrastate commerce."  291 Neb. Admin. Code Ch. 10 § 002.01 (2001).  The rules further state that "[t]he NUSF surcharge shall not be assessed on interstate telecommunications services."  *Id.* § 002.01D1.  When a charge is made for joint interstate and intrastate telecommunications services, special rules apply.  *Id.* § 002.01D1a.  If the intrastate portion was not charged separately or cannot be readily determined, NPSC rules state that the NUSF surcharge applies to the total charge,  or NPSC may approve an allocation factor to determine the intrastate portion of joint use service charges or adopt FCC safe harbor provisions.  *Id.* §§ 002.01D1a, 002.01D1b.

On its own motion, NPSC opened an investigation on August 24, 2004, to determine whether VoIP services were subject to the NUSF universal service contributions.  (Complaint, Ex. 1, hereafter "Findings and Conclusions" at 1).  NPSC invited comment on the matter, and received comments from various telecommunications companies including Qwest.  (Findings and Conclusions at 2).  NPSC held a legislative hearing on December 8, 2004.  (*Id*).  On March 22, 2005, NPSC issued its Findings and Conclusions, which are

5

the subject of this action.

In its Findings and Conclusions, NPSC concluded that "facilities-based VoIP providers shall contribute to the NUSF, and the NUSF surcharge shall be assessed on the intrastate portion of the facilities-based VoIP providers' VoIP-related services . . . effective June 1, 2005." (*Id.* at 21). NPSC defined "facilities-based VoIP providers" as "those providers that either own or operate networks that utilize Internet Protocol in the delivery of voice services, but do not share addressing space with the public Internet and therefore, are not part of the Internet." (*Id.* at 17-18). NPSC determined that Qwest qualified as a "facilities-based VoIP provider," while another VoIP provider, Vonage, did not because Vonage "provide[s] VoIP services over the public Internet." (*Id.* at 17 n.32, 18 n.34).[1]

NPSC rejected the contention that VoIP service is an "information service," rather than a "telecommunication service," and therefore not subject to the NUSF surcharge. (*Id.* at 18).[2] NPSC determined that even though VoIP services utilize protocol processing to convert messages from asynchronous IP packets into synchronous TDM format, this conversion did not remove VoIP service from the definition of telecommunications service. (*Id.*).[3] NPSC recognized that services offered by facilities-based VoIP providers may

---

[1] NPSC reserved consideration on the issue of whether "Vonage-like VoIP services" should be assessed NUSF surcharges in the future. (Findings and Conclusions at 18 n.34).

[2] 291 Neb. Admin. Code Ch. 10 § 002.01 (2001) states: "[t]he NUSF surcharge shall be assessed on all end-user *telecommunications services* provided in Nebraska intrastate commerce." (emphasis added).

[3] "Telecommunications service" is defined as "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used."  47 U.S.C. § 153(46).  "Information services" are defined as "the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications, and includes electronic publishing, but does not include any use of any such capability for the management, control, or operation of a telecommunications system or the management of a telecommunications service."  47 U.S.C. § 153(20).

contain service information components; therefore, NPSC determined that providers could separately price information services components and telecommunications services, and if supported by cost information and approved by NPSC, the providers could report the separate telecommunications services revenue for purposes of assessing the NUSF surcharge. (*Id.* at 19).

Qwest moved for rehearing of the Findings and Conclusions and requested an evidentiary hearing on the issue of whether Qwest qualified as a "facilities-based provider." (Opposition Brief at 13). NPSC held a non-evidentiary oral argument on April 20, 2005, and denied Qwest's motion in its entirety. (*Id.*).

**Federal Decisions on State Regulation of Other VoIP Services**

In September 2003, Vonage, a broadband phone company, sought a declaratory ruling from the FCC after the state commission of Minnesota imposed state regulation on Vonage's VoIP services, ordering Vonage to comply with all Minnesota statutes and regulations of telephone service. Memorandum Opinion and Order, *Vonage Holdings Corp. Petition for Declaratory Ruling Concerning an Order of the Minnesota Public Utilities Commission* ("*Vonage Order*"), WC Docket No. 03-211, 19 FCC Rcd. 22404 ¶ 1, 32 (FCC 2004). On November 12, 2004, the FCC released an order, concluding that the FCC, "not the state commissions," had the responsibility of deciding whether regulations applied to IP-enabled services. Vonage Order ¶ 1. The FCC preempted the Minnesota commission's order, stating Voyage's VoIP service "cannot be separated into interstate and intrastate communications for compliance with Minnesota's requirements without negating valid federal policies and rules." *Id.*

7

Voyage also filed complaints in United States District Court for the Districts of Minnesota and the Southern District of New York, seeking injunctive relief. *See Voyage Holdings Corp. V. Minnesota Pub. Utils. Comm'n,* 290 F. Supp. 2d 993 (D. Minn. 2003); *see also Voyage Holding Corp. V. New York State Pub.Serv. Comm'n,* 04cv4206 (DFE), 2004 WL 3398572, at *1 (S.D.N.Y. July 16, 2004). The Minnesota court permanently enjoined the Minnesota commission from regulating Vonage's VoIP service, stating the VoIP service was not subject to regulation because it was an "information service." *Voyage Holdings Corp. v. Minnesota Pub. Utils. Comm'n,* 290 F. Supp. 2d at 999, 1002-03. The New York court issued a preliminary injunction enjoining the New York commission from exercising jurisdiction over Vonage's VoIP service. *Voyage Holding Corp. V. New York State Pub.Serv. Comm'n,* 2004 WL 3398572, at *3.

Qwest contends that its IP-enabled service is the same as Vonage's IP-enabled service in all material respects. (Complaint ¶ 38). Qwest argues that both Qwest's and Vonage's IP-enabled services employ a form of packet switching to transmit data to pre-determined locations. (Complaint ¶ 37). Furthermore, Qwest alleges that Qwest's and Vonage's IP-enabled services both contain the three "basic characteristics" discussed by the FCC in the Voyage Order. (*Id.*). These characteristics include:

> [A] requirement for a broadband connection from the user's location; a need for IP-compatible CPE; and a service offering that includes a suite of integrated capabilities and features, able to be invoked sequentially or simultaneously, that allows customers to manage personal communications dynamically, including enabling them to originate and receive voice communications and access other features and capabilities, even video.

Voyage Order ¶ 32.   The FCC indicated that any state regulation of IP-enabled services containing these basic characteristics would likely be precluded. *Id.*

8

**Qwest's Claims**

Qwest filed the Complaint in the above-captioned matter on April 21, 2005, seeking declaratory and injunctive relief from NPSC's allegedly unlawful attempt to impose state regulation on Qwest's interstate IP-enabled service. (Complaint ¶ 1,2). The Complaint asserts that NPSC violated the Telecommunications Act of 1996 (the "Act") and the Supremacy Clause; violated equal protection by requiring Qwest to contribute to the NUSF but not requiring Voyage and other VoIP providers to contribute; violated the Commerce Clause, and violated due process of law by not permitting Qwest the opportunity to submit a proposed order or post-hearing brief and by failing to conduct an evidentiary hearing. (Complaint ¶¶ 51-66). In the Complaint, Qwest also asserts violations of Nebraska state law, claiming Qwest's IP-enabled service is not a "telecommunications service" provided in "Nebraska intrastate commerce" under Nebraska law, and the "facilities-based VoIP providers" distinction is arbitrary and provides no legal basis for distinguishing between various VoIP providers. (Complaint ¶¶ 67-73).

Qwest contemporaneously filed a petition in Nebraska state court in the District Court of Lancaster County. In the petition, Qwest alleged: (1) NPSC's actions were inconsistent with Nebraska law because NPSC does not have jurisdiction over interstate VoIP offerings; (2) the "facilities-based VoIP provider" distinction is unsupported by fact or law and violates NPSC's rule that every telecommunications carrier contribute on an equitable and nondiscriminatory basis to the NUSF; and (3) Qwest's VoIP service is not a "telecommunications service" provided in "Nebraska intrastate commerce" under Nebraska law. (State Court Petition at 9-13). Qwest contends it filed the state petition "primarily as a precautionary measure," and at the time Qwest filed its Brief in Opposition

to Defendants' Motion to Dismiss, Qwest had a pending motion before the state court to stay the state court proceeding. (Filling No. 27, Ex. 2). The state court action has not been stayed, and a hearing is scheduled for November 1, 2005. (Filing No. 35-3, hereafter "Reply Brief" at 15-16).

In response to Qwest's federal Complaint, NPSC and its Commissioners filed a Motion to Dismiss, or in the alternative, a Motion to Stay the Action. (Filing No. 25). NPSC moved to dismiss, arguing: (1) the Eleventh Amendment to the United States Constitution bars this action against NPSC; (2) NPSC and its Commissioners were immune from the state law claims under the Eleventh Amendment; and (3) Qwest's 42 U.S.C. § 1983 claims failed to state a claim for which relief can be granted. (*Id.*). In the alternative, NPSC moved to dismiss the action in its entirety, or to stay the action pending resolution of the state court action. If the Court does not stay or dismiss this action, NPSC asks that the trial be held in Lincoln, Nebraska. (*Id.*).

### *Discussion*

**Preliminary Matters**

In its Brief in Opposition to Defendants' Motion to Dismiss, Qwest does not oppose the Defendants' Motion to Dismiss NPSC as a Defendant, arguing that full relief is available from the individual Defendant Commissioners. (Opposition Brief at 3,17). Therefore, the Court grants the Defendants' Motion to Dismiss NPSC as a Defendant. Likewise, Qwest does not oppose the Defendants' Motion to Dismiss the state claims against the individual Defendant Commissioners, stating that Qwest will pursue the state claims in state court. (*Id.* at 3-4,17-18). The Court grants Defendants' unopposed Motion to Dismiss the state

10

claims against the remaining Defendants, the Individual Commissioners of NPSC.

In response to the Defendants' Motion to Dismiss Qwest's 42 U.S.C. § 1983 claims, Qwest asserts that it is not alleging any § 1983 violations. (Opposition Brief at 26). The Complaint refers to § 1983 twice, alleging that NPSC and its Commissioners acted "under state law for purposes of 42 U.S.C. § 1983" and that the "Court has subject matter jurisdiction of the action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983." (Complaint ¶¶ 6,7). Despite these references, Qwest submits that none of the nine counts in the Complaint alleges a § 1983 violation and the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331. (Opposition Brief at 26). The Court agrees that § 1331 grants this Court subject matter jurisdiction. *See Shaw v. Delta Air Lines Inc.,* 463 U.S. at 96 n.14. Likewise, the Court agrees that Qwest is not alleging any § 1983 violations; therefore, the Court denies the Defendants' Motion to Dismiss Qwest's 42 U.S.C. § 1983 claims, as moot.

**Abstention**

The Defendant Commissioners argue that the Court should abstain from deciding the federal claims in this matter during the pendency of the Nebraska state court action. (Filing No. 25). The Defendants ask the Court to dismiss the action in its entirety or to stay the action pending the resolution of the state court proceeding. (*Id.*). In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976), the Supreme Court said: "Abstention from the exercise of federal jurisdiction is the exception, not the rule." Similarly, the Eighth Circuit has said, "[a]bstention is an extraordinary and narrow exception to the virtually unflagging obligation of federal courts to exercise jurisdiction given them.

*Otter Tail Power Co. v. Baker Electric,* 116 F3d 1207, 1215 (8th Cir. 1997).

The Commissioners contend that abstention in this matter is appropriate based on three abstention doctrines arising from the following Supreme Court cases: (1) *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943);  (2) *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); and  (3) *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496 (1941).  *Burford* abstention is "appropriate where there have been presented difficult questions of state law bearing on important policy problems of substantial public import whose importance transcends the results in the case then at bar." *Colorado River,* 424 U.S. at 814.  *Colorado River* abstention permits "the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration...." *Id.* at 818.  *Pullman* abstention provides for abstention "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Colorado River,* 424 U.S. at 814 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959)).

### *Burford* Abstention

*Burford* abstention provides no basis for the Court to abstain from deciding the federal claims in this matter.  "Burford abstention applies when a state has established a complex regulatory scheme supervised by state courts and serving important state interests, and when resolution of the case demands specialized knowledge and the application of complicated state laws." *Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497 (8th Cir. 1992).  The Eighth Circuit has further stated "[t]he premise of Burford abstention is that 'a federal court should abstain when the action before it involves matters of state law best

12

left to the state alone.'" *In re Otter Tail Power Co.,* 116 F.3d 1207 (8th Cir.1997) (citing *Middle South Energy, Inc. v. Arkansas Pub. Serv. Comm'n*, 772 F.2d 404, 417 (8th Cir.1985). Because Qwest has not opposed the Defendants' Motion to Dismiss the state claims, there are no state law claims before the Court, and the matter "does not turn on local factors or local expertise." *See Middle South Energy,* 772 F.2d at 417. Therefore, the Court finds *Burford* abstention is inapplicable.

### *Colorado River* Abstention

Likewise, *Colorado River* abstention is inapplicable to the case at bar. As Qwest points out, abstention on *Colorado River* grounds requires parallel federal and state court proceedings. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271 (1988)*; see also McLaughlin v. United Virginia Bank*, 955 F.2d 930, 935 (4th Cir. 1992); *see also New Beckley Mining Corp. v. International Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir.1991). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley*, 946 F.2d at 1073 (citing *LaDuke v. Burlington N. R.R.*, 879 F.2d 1556, 1559 (7th Cir.1989). Qwest did not include federal claims in its state court petition and does not oppose the Defendants' Motion to Dismiss the state law claims in this federal proceeding. The Court finds *Colorado River* abstention is inapplicable because the claims in this proceeding are different from the claims in the state proceeding.

### *Pullman* Abstention

Unlike *Burford* and *Colorado River* abstention, *Pullman* abstention is appropriate under the circumstances of this case. Under *Pullman* abstention, "a federal court may, and ordinarily should, refrain from deciding a case in which state action is challenged in federal

13

court as contrary to the federal constitution if there are unsettled questions of state law that may be dispositive of the case and avoid the need for deciding the constitutional question." 17A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4242 (1988) (citing *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984)). The United States Supreme Court has stated:

> In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily.

*City of Meridian v. Southern Bell Tel. & Tel. Co.*, 358 U.S. 639, 641 (1959).

The Eighth Circuit has determined the following factors must be considered to determine whether *Pullman* abstention is appropriate: "(1) the effect abstention would have on the rights to be protected by considering the nature of both the right and necessary remedy; (2) available state remedies; (3) whether the challenged state law is unclear; (4) whether the challenged state law is fairly susceptible to an interpretation that would avoid any federal constitutional question; and (5) whether abstention will avoid unnecessary federal interference in state operations." *Beavers v. Arkansas State Bd. of Dental Examiners,* 151 F.3d 838 (8th Cir. 1998).

In the present matter, Qwest filed a petition in Nebraska state court, essentially alleging that NPSC's Findings and Conclusions are inconsistent with Nebraska law and that NPSC exceeded its authority under Nebraska state law when it imposed state regulation on Qwest's IP-enabled service. (State Court Petition at 9). Contrary to Qwest's assertion that "there are no unclear issues of state law that. . . if clarified, would allow the Court to avoid deciding a constitutional claim. . . .," if the state court determines that

14

NPSC's actions violate Nebraska law as Qwest alleges, the Court would have no need to consider whether NPSC's actions violate the Constitution. (Opposition Brief at 21).

The Court rejects Qwest's argument that *Pullman* abstention is inapplicable to preemption claims. Qwest cites *Middle South Energy, Inc. v. Arkansas Public Service Commission*, 772 F.2d 404, 418 (8th Cir. 1985), where the Eighth Circuit stated: "Preemption and the commerce clause, however, are matters of federal law, and there is no interpretation of [state] law which would make it unnecessary for us to reach the question as to whether the Constitution forecloses even the mere issuance of the show cause order entered here by the [state commission]." As the Defendants point out, *Middle South* is distinguishable from the present matter because there is an interpretation of Nebraska law that would make it unnecessary for the Court to consider Qwest's preemption and Commerce Clause claims. Further, most federal courts that have rejected abstention in preemption cases have done so only when state law is clear, thereby making the preemption claim unavoidable. *See Fleet Bank, Nat. Ass'n v. Burke*, 160 F.3d 883 (2d Cir. 1998) (stating "if [plaintiffs] dispute the meaning of state law in preemption cases, they should proceed initially and promptly to state court for an authoritative construction of state law"); *see also Federal Home Loan Bank Board*, 778 F.2d 1447, 1451 (10th Cir. 1985); *Kennecott Corp. v. Smith*, 637 F.2d 181, 185 (3d Cir.1980); *and Chemical Specialties Manufacturers Ass'n v. Lowery*, 452 F.2d 431, 433 (2d Cir.1971).

Nebraska state courts have not had the opportunity to interpret the scope of NPSC's authority to impose state regulations on IP-enabled services such as Qwest's. If the state court determines that NPSC acted within its authority and in accordance with Nebraska

15

law, Qwest will have the right to have its preemption claims heard in federal court. On the other hand, if the state court determines that NPSC exceeded its authority or that its decision violates Nebraska law, there will be no need for this Court to consider Qwest's federal constitutional claims. The Court finds *Pullman* abstention is proper based on the circumstances of this case.

The Defendants have asked the Court to abstain from deciding the federal claims and either to dismiss the action in its entirety or to stay the proceeding pending resolution of the state court proceeding. (Filing 25 ¶ 4). The Eighth Circuit has said *Pullman* abstention "involves not an abdication of federal jurisdiction, but only the postponement of its exercise." *Bob's Home Service, Inc. v. Warren County,* 755 F.2d 625 (8th Cir. 1985) (citing *Harrison v. NAACP,* 360 U.S. 167, 177 (1959)). For this reason, the Eighth Circuit determined that under *Pullman* abstention, a district court should retain jurisdiction over the case pending resolution in the state court, rather than dismissing the case. *Bob's Home*, 755 F.2d at 628; *see also* 17A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4243 (1988) (noting that when a federal court "has determined to abstain, [it] should not dismiss the action but should stay it and retain jurisdiction pending the proceedings in the state courts"). For these reasons, the Court will stay the proceeding pending resolution of the state claims in the state court.[4]

IT IS ORDERED:

1. The Defendants' Motion to Dismiss (Filing No. 25) is granted in part and denied in part as follows:

---

[4] Because the Court has determined that it is appropriate to abstain from deciding the federal claims in the Complaint and to stay the proceeding pending state court resolution of the state claims, it is unnecessary for the Court to address the Defendants' Request for Place of Trial.

    A.    The Defendants' Unopposed Motion to Dismiss the Nebraska Public Service Commission is granted;

    B.    The Defendants' Unopposed Motion to Dismiss the state claims (Filing No. 1, Counts 7-9) is granted; and

    C.    The Defendants' Motion to Dismiss claims based on 42 U.S.C. § 1983 for failure to state a claim upon which relief can be granted is denied as moot;

2. The Defendants' Motion to Abstain from deciding the federal claims raised in the Complaint during the pendency of the Nebraska state court proceeding (Filing No. 25) is granted; and

3. The Court will stay this action pending resolution of the Nebraska state court action;

4. The Plaintiff shall file a report informing the Court of the status of the Nebraska state court action no later than June 30, 2006, and every six months thereafter, until that action is resolved. Failure of the Plaintiff to file timely status reports will result in dismissal of this action, without prejudice.

DATED this 7th day of October, 2005.

                      BY THE COURT:

                      s/Laurie Smith Camp
                      United States District Judge